NOT FOR PUBLICATION (Doc. Nos. 3, 4, 8)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MATTHEW A. SENIOR, : | |
| Plaintiff, : | |
| : | Civil No. 10-2886 (RBK/JS) |
| v. : | |
| : | **OPINION** |
| GAIL PAGE, : | |
| fiduciary/guardian/administrator, Office of : | |
| the Public Guardian, 2 Pillsbury, Suite 400, : | |
| Concord, NH 03301, : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This matter arises out of Defendant Gail Page's alleged mailing of fraudulent documents from New Hampshire to Plaintiff Matthew A. Senior in New Jersey. Plaintiff asserts a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq., ("RICO"), based on Defendant's alleged mail fraud. The matter comes before the Court pursuant to: (1) Defendant's motion to dismiss the Complaint for, among other things, lack of subject-matter jurisdiction under the Rooker-Feldman doctrine, which bars a party from asserting a claim in federal court that is inconsistent with a prior state court judgment; and (2) Plaintiff's cross-motion for leave to amend the Complaint. For the reasons discussed below, the Court denies as futile Plaintiff's cross-motion for leave to amend the Complaint and grants Defendant's motion to dismiss for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine.

1

I.      BACKGROUND[1]

Plaintiff is a pro se litigant currently incarcerated at Fort Dix Federal Correctional Institution in Burlington County, New Jersey.  In 2001, Plaintiff's two sisters petitioned the New Hampshire Probate Court to appoint a guardian over the person and estate of their mother, Dorothy A. Senior-Lowe.  The New Hampshire Probate Court granted the petition due to Ms. Senior-Lowe's age and incapacity.  The Probate Court named the New Hampshire Office of Public Guardian ("OPG") as Ms. Senior-Lowe's guardian.  Defendant Gail Page provided guardianship services to Ms. Senior-Lowe on behalf of the OPG.  In that capacity, Defendant submitted periodic accountings to the Probate Court.  Defendant sent copies of those accountings to Plaintiff and other parties to the proceeding.

In 2004, Plaintiff was arrested for trafficking crack cocaine out of his residence in Portsmouth, New Hampshire.  He was sentenced to ten years in federal prison for conspiracy to distribute a controlled substance.  In 2006, the OPG advanced $75,000 to Plaintiff for his legal defense and eventually advanced another $30,000 to settle a civil forfeiture action with the Department of Justice.  Additionally, the OPG forgave approximately $400,000 in loans that Plaintiff owed to Ms. Senior-Lowe.  In exchange, Plaintiff executed a General Release relinquishing all rights to his mother's estate.

Ms. Senior-Lowe died in March 2007.  After her death, Plaintiff initiated an action in New Hampshire Probate Court contesting OPG's guardianship of her estate and seeking revocation of the General Release.  In that state court action, Plaintiff argued that the General Release was void because the OPG fraudulently induced him to execute the release.  He argued

---

[1] As noted below, Defendant raises a factual challenge to this Court's subject-matter jurisdiction.  When deciding a factual challenge to jurisdiction, the Court may consider evidence outside of the pleadings.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  The facts described in this section are drawn from the Complaint and proposed amended "supplement" to the Complaint, as well as public records submitted by Defendant in support of her motion to dismiss.

2

that the OPG's accountings undervalued his mother's estate, and that he relied on those valuations when he agreed to give away his future inheritance in exchange for "$505,000"[2] in forgiven debt. (Am. Compl., at 1). According to Plaintiff, he relied on the fraudulent accountings to his detriment when he signed the General Release because he unknowingly gave away "$1,500,000" in future inheritance in exchange for only $505,000 in forgiven debt. (Id.).

The Probate Court denied Plaintiff's request for revocation of the General Release. The Probate Court found that Plaintiff failed to prove that "he executed the release only after relying on a false representation made by the Office of Public Guardian." In re Will and Estate of Dorothy Ann Lowe, No. 2007-0474, slip op., at 3 (N.H. Probate Ct. Oct. 29, 2008). Plaintiff appealed that decision to the New Hampshire Supreme Court. On August 19, 2009, the New Hampshire Supreme Court issued an opinion upholding the Probate Court's ruling. See In re Will and Estate of Dorothy Ann Lowe, No. 2008-0877, slip op. (N.H. Aug. 19, 2009). The Court specifically upheld the Probate Court's finding that Plaintiff failed to prove that "he executed the release only after relying upon a false representation by the OPG." Id. at 2.

Plaintiff initiated this matter by filing the Complaint in this Court on June 8, 2010, almost ten months after the New Hampshire Supreme Court issued its ruling. The Complaint asserts a single cause of action under RICO. It alleges that when Defendant sent the allegedly fraudulent accountings to Plaintiff through the mail from New Hampshire to New Jersey, she violated RICO by committing mail fraud. Plaintiff again asserts that the accountings prepared by Defendant undervalued his mother's estate and that in deciding whether to execute the release, he "relied wholly upon the accountings prepared and mailed by [Defendant] (from New Hampshire to the federal prison in New Jersey) to assess the value of his mothers [sic] estate."

---

[2] It is unclear how Plaintiff calculates this amount. The principal on the loans referenced in the documents total only $495,000.

(Pl.'s Brief in Opp'n to Def.'s M. to Dismiss, at 1; see also Am. Compl., at 1).  He does not explain how the accountings were in error or recite their estimated value of his inheritance.  He alleges only that if "the mailed accountings prepared by [Defendant] accurately and correctly accounted the total value and inventory of his mothers [sic] estate, . . . [they] . . . would have reflected an inheritable right of $1,500,000.00 (not accounted in the mailings)."  (Am. Compl., at 1).

Defendant did not answer the Complaint but timely moved to dismiss the Complaint on August 5, 2010.  Defendant argues that the Complaint should be dismissed because:  (1) the Court lacks personal jurisdiction over Defendant; (2) the Court lacks subject-matter jurisdiction over Plaintiff's claim under the Rooker-Feldman doctrine; (3) Plaintiff's claim is barred by the doctrines of res judicata and collateral estoppel; and (4) Plaintiff fails to state a claim under RICO.

Plaintiff did not timely oppose Defendant's motion to dismiss.  On September 1, 2010, Plaintiff made a motion for an extension of time to oppose Defendant's motion to dismiss and for leave to file an Amended Complaint (Doc. No. 4).  Plaintiff's proposed Amended Complaint is a five-paragraph addendum to his original Complaint.  The Amended Complaint does not include any new claims.  It simply provides additional background for Plaintiff's RICO claim.  It alleges: (1) that Defendant sent fraudulent accountings through the mail on July 21, 2003, June 23, 2004, May 23, 2005, and May 22, 2006; (2) that Plaintiff relied on those accountings when deciding to execute the General Release; (3) that Plaintiff would not have agreed to the General Release if the accountings had accurately reflected his $1,500,000 inheritance; and (4) that Defendant knew that Plaintiff would rely on her false accountings when executing the General Release.

4

On February 14, 2011, the Court granted Plaintiff additional time to file opposition to Defendant's motion to dismiss. Plaintiff did not timely file opposition, but made another motion for an extension of time (Doc. No. 8). On March 7, 2011, Plaintiff finally submitted opposition to Defendant's motion to dismiss. Notwithstanding Plaintiff's untimely filing, the Court, in its discretion, has considered all of Plaintiff's submissions in deciding these motions.

## II.     LEGAL STANDARD

Federal courts are bound to determine, in the first instance, whether they have jurisdiction to hear claims before them. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1044-45 (3d Cir. 1993); Temple Univ. v. White, 941 F.2d 201, 216 (3d Cir. 1991); TM Marketing, Inc. v. Art & Antiques Assoc., L.P., 803 F. Supp. 994, 996-97 (D.N.J. 1992). If jurisdiction is lacking, the court must dismiss the action. Trent Realty Assocs. v. First Federal Sav. & Loan Ass'n, 657 F.2d 29, 36 (3d Cir. 1981); TM Marketing, Inc., 803 F. Supp. at 997; Carney v. Dexter Shoe Co., 701 F. Supp. 1093, 1100 (D.N.J. 1988). Because the lack of jurisdiction itself precludes a court from exercising judicial power, a court may take no further action in a matter once it determines that it lacks jurisdiction. See First Am. Nat'l Bank v. Straight Creek Processing Co., 756 F. Supp. 945, 946 (E.D. Va. 1991).

Rule 12(b)(1) permits a court to dismiss a case for lack of subject-matter jurisdiction. Motions under Rule 12(b)(1) may be "facial" or "factual" challenges to jurisdiction. Mortensen, 549 F.2d at 891. A factual challenge "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." Id. at 891-92. During a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations" and the court may consider and weigh evidence outside of the pleadings. Id. at 891. The plaintiff bears "the burden of proving that jurisdiction . . . exist[s]." Id. When, as here, the moving party supports

5

its motion with a sworn statement of facts, "the court should treat the . . . challenge as a factual attack on jurisdiction." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).

### III.  DISCUSSION

#### A. Subject-Matter Jurisdiction under the Rooker-Feldman Doctrine

Defendant argues that under the Rooker-Feldman doctrine the Court lacks subject-matter jurisdiction to hear Plaintiff's claim. See D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923).

"Under the Rooker-Feldman doctrine, a district court … lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006). However, the doctrine is narrow. Id. It "applies only to cases brought by (1) state-court losers (2) complaining of injuries caused by state court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments." Id.; see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Put simply, Rooker-Feldman bars a federal proceeding when "'entertaining the federal claim would be the equivalent of an appellate review'" of the state judgment. Allah v. Whitman, No. 02-4247, 2005 U.S. Dist. LEXIS 18171, at *4 (D.N.J. Aug. 17, 2005) (quoting FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). Thus, a cause of action asserted in federal court is barred under Rooker-Feldman if it seeks to vacate the decision, reasoning, or findings of a state court. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419-20 (3d Cir. 2001).

The Court finds that Rooker-Feldman bars Plaintiff's Complaint. Plaintiff's sole claim is that Defendant violated RICO by using the mail to send fraudulent accountings from New

Hampshire to New Jersey.  Although reliance is not an element of a RICO claim based on mail fraud, see Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 649 (2008), a RICO plaintiff must prove that he was injured by the defendant's fraud, see 18 U.S.C. § 1964 (stating that only a person "injured in his business or property by reason of a violation of [RICO] may sue therefor"); Maio v. Aetna, 221 F.3d 472, 483 (3d Cir. 2000).  The "injury" element of a RICO claim requires "'a concrete financial loss and not mere injury to a valuable intangible property interest.'"  Maio, 221 F.3d at 483 (quoting Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)).  Moreover, a plaintiff's injuries must concern "his business or property."  18 U.S.C. § 1964.  A plaintiff may not pursue a RICO claim based on pecuniary losses resulting from personal injuries such as emotional and mental distress.  See Pilkington v. United Airlines, 112 F.3d 1532, 1536 (11th Cir. 1997) (holding that RICO claims predicated on personal injuries are not cognizable).  A RICO plaintiff must also prove that the defendant's alleged fraud was both the "but for" and "proximate" cause of a cognizable injury.  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-66 (1992).

Although reliance is not a necessary legal element of a RICO claim based on mail fraud, see Bridge, 553 U.S. at 649, Plaintiff's only theory of causation and injury is that he unwittingly gave away $1,005,000 in inheritance because he relied on Defendant's alleged misrepresentations.  Plaintiff asserts that he executed the General Release because he believed that his inheritance was proportionate to his $505,000 debt.  He claims that if he had known that his inheritance was approximately $1,500,000, he would not have contracted away his inheritance in exchange for $505,000 in forgiven debt.  Thus, according to Plaintiff, Defendant's fraud proximately caused him a concrete pecuniary loss of $1,005,000.  Reliance is therefore a

7

necessary fact in Plaintiff's theory of causation even though it is not a necessary legal element of a RICO mail-fraud claim.

Unfortunately for Plaintiff, the New Hampshire Supreme Court specifically found that Plaintiff did not rely on Defendant's alleged misrepresentations when he executed the General Release. In re Will and Estate of Dorothy Ann Lowe, No. 2008-0877, slip op., at 2. The Rooker-Feldman doctrine therefore bars Plaintiff's RICO claim because, to succeed on his theory of causation and injury, this Court would have to find that Plaintiff did in fact rely on Defendant's alleged misrepresentations when he executed the General Release. Such a finding would directly contradict the New Hampshire Supreme Court's ruling. Under the Rooker-Feldman doctrine, this Court is without jurisdiction to hear Plaintiff's claim. See Desi's Pizza, Inc., 321 F.3d at 419-20 (Rooker-Feldman bars those claims that "[are] inextricably intertwined with [the] state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.").

### B. Plaintiff's Motion for Leave to Amend the Complaint

Plaintiff seeks leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a). Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a court should grant leave unless equitable considerations render it unjust. Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Those considerations include undue delay, bad faith, dilatory motive, prejudice to the non-movant, and futility. Winer Family Trust v. Queen, 503 F.3d 319, 330 (3d Cir. 2007); Arthur, 434 F.3d at 204; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). A court determines whether an amendment is futile by taking all the proposed pleadings

as true and viewing them in the light most favorable to the plaintiff.  Winer Family Trust, 503 F.3d at 330.

The Court denies Plaintiff's motion to amend as futile because the Amended Complaint does not assert a viable theory of injury regarding Plaintiff's RICO claim.  Indeed, Plaintiff's proposed amendments reiterate his original theory of injury and causation: "Plaintiff asserts . . . . that the fraudulent accountings prepared and mailed by [Defendant] were relied upon by him to assess the value of his 'inheritance right' from his mothers [sic] estate verses the $505,000 he received as a result of signing a release relinquishing his right to inherit from her estate." (Am. Compl., at 1).  As discussed above, the New Hampshire Supreme Court previously ruled against Plaintiff on that exact issue.  Because Plaintiff cannot prove injury as required by RICO without also proving that he relied on Defendant's allegedly fraudulent accountings, Plaintiff's RICO claim, even as alleged in the Amended Complaint, is barred by the Rooker-Feldman doctrine.  See Desi's Pizza, Inc., 321 F.3d at 419-20.  Plaintiff's motion for leave to amend is therefore denied.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the Complaint for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine is granted and Plaintiff's motion for leave to amend the Complaint is denied.  An appropriate Order shall enter today.

Dated: 3/16/2011                                                      /s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge